### JOHNS-PRATT CO. v. SACHS CO. et al.

(Circuit Court, D. Connecticut. July 18, 1907.)

#### No. 1,241.

PATENTS—SUIT FOR INFRINGEMENT—PRELIMINARY INJUNCTION.

> A preliminary injunction against infringement of the Sachs patent, No. 660,341, for an electrical safety fuse, denied, where upon the showing made there was a serious question whether the article made and sold by defendants embodied the invention of the patent and it also appeared that similar articles were generally made by others and for sale in the open market, and that the injunction, if granted, would cause serious loss to defendants.

> [Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, §§ 489–495.

> Grounds for denial of preliminary injunctions in patent infringement suits, see note to Johnson v. Foos Mfg. Co., 72 C. C. A. 123.]

In Equity. On motion for preliminary injunction.

Gross, Hyde & Shipman (Edmund Wetmore, of counsel), for complainant.

Bartlett, Brownell & Mitchell (John P. Bartlett, of counsel), for defendants.

MARTIN, District Judge (orally). This motion for an injunction pendente lite is based upon complainant's bill and affidavits.

It is claimed by the complainant that the defendant Sachs on or about

the 24th day of November, 1899, invented a new and useful improvement in electrical safety fuses; that on the 23d day of October, 1900, said Sachs procured letters patent No. 660,341; that on the 14th day of January, 1903, said Sachs, then being the sole owner of said patent, transferred the same to the complainant for a valuable consideration, and from thence hitherto the complainant has been the owner thereof; that the same was and is of great value and utility; that the orator has manufactured and sold large numbers of safety fuses, which in construction embody the invention set forth in said letters patent; that, were it not for the infringement by the defendant, the complainant would be "in the undisturbed possession, use, and enjoyment of the exclusive privileges secured by said patent and would be in the receipts thereof"; that in August, 1905, said Sachs organized a corporation in which the three defendants named were its stockholders and officers; that the complainant, upon information, believes that each of said stockholders and officers well knew of the facts relating to said invention and patent, also of said sale and transfer of said patent to the complainant, and that the complainant was in the business of manufacturing and selling said safety fuses, using the principle of said invention; that said Sachs is estopped from denying that said letters patent are good and valid, and that the other defendants, by reason of their knowledge, privity, association, and co-operation, are also bound by said estoppel; and, further, that said defendants without right have been and are now manufacturing and selling safety fuses that embody the principles of said invention and patent that was so sold and transferred to the complainant. There are other facts stated in the complainant's case which are not necessary to refer to here. The defendant Sachs does not deny inventing a mode of construction of electrical safety fuses, nor of obtaining letters patent No. 660,341 therefor. He also admits that the same was sold and duly transferred to the complainant; that said patent was legally obtained; that it was a novelty in the construction of safety fuses, etc. The defendants Parker and Hart admit the formation of the Sachs Company; that they are stockholders and officers therein; that the defendant Sachs is president and manager of the company, but each claim that they never had any experience in the business of manufacturing; that they knew nothing about electrical safety fuses; that they have always been engaged in other business; that they have taken no part in the management of the business carried on by said company; that they have always understood and believed that the articles manufactured by said defendant company were not covered by patents owned by the complainant or any other party or parties, and never actually knew of this patent until the bringing of this suit.

In the view I take of the pending question, it is unnecessary to discuss or even consider the allegations of Parker and Hart. The complainant asserts: That the fuse covered by this patent is a "combination of old elements, each old in itself, but taken together alleged to produce an improved fuse—that is, a wide, thin fuse strip (old), a casing (old) and a filling (old). The novelty consists in uniting a wide, thin strip with the filling so it will completely envelop the fuse and

thus best utilize the properties of the ready fusibility and the quick dispersion of the heat of the strip when melted. The thin strip of the claims means any degree of thinness which will accomplish the useful result intended to be achieved, viz., a fuse which will carry its required load, melt readily, completely and quickly without hanging, so called." That the use of such a fuse in an electrical circuit is that it melts under predetermined conditions—i. e., when the electrical current passing through it becomes heavier or more powerful than is considered safe for the circuit—and thus, by so melting, automatically cuts the circuit before the electrical system or apparatus can be injured by the excessive current. That the fuse consists of a flat fusel strip of metallic ribbon inclosed in a case of nonconducting fiber with metal end caps usually of brass, to which the ends of the fusible metallic ribbon are joined by terminals, and the filling material of the fuse forms a nonconductor about the fusible metallic ribbon. That the hanging or arcing process is avoided by use of a fuse manufactured under this patent, and, further, that the fuses now made and sold and put on the market by the defendants embody the identical principle of the patent.

The defendant Sachs has filed an affidavit, and therein quite minutely and extensively states the condition of the art preceding his invention, and the history of electrical fuses. He agrees with the complainant that the casing of the safety fuse, metallic wires, and strips passing through it, surrounded by a nonconducting filling, were old in the art, but he denies the allegations of the complainant that the said invention and patent involved in this case was simply a combination of these old elements. On the contrary, he claims a new discovery, namely, the adjustment of a very thin, fine metallic ribbon with an extended area within the casing of the fuse, so thin and so extended in its area that the nonconducting material encased about it being likewise extended, thus giving such a maximum contact with the nonconducting filling material that the circuit is immediately opened when any portion of the metallic ribbon or strip becomes molten and the electrical continuity is immediately severed or cut off while in this molten condition; that in fuses previously manufactured the filling material so supported the molten metal that the melting of the fuse did not immediately cut the circuit but would arc or hang, and that such failure of immediate interruption of the circuit upon the melting of the ribbon or strip under the old process resulted in inaccuracy and unreliability as to its operation in the presence of "unequal current value." The complainant contends that the dimension of fusible ribbon—i. e., its length, area, and shape—is simply an adaptation to the load in amperes and volts which it is intended to carry; that its thickness or area must be adjusted to the normal element of the current, which will cause it to melt, and therefore it is merely a question of degree, and that the patenting of a degree of thickness is absurd. It occurs to me that this contention of the complainant amounts simply to a criticism of the patent.

As the evidence now stands, I am of the opinion that this principle above set forth as the defendant's claim is the real novelty, if any,

and the gist, of the invention. The defendant says that he has not made and sold and is not now making a fuse like that covered by this patent; that the fuse he is making is like those in general use by other manufacturers, which are understood by the trade generally not to be covered by any enforceable patent; that the metallic strips in fuses that he is making and selling are not "very thin and fine with extended area," but that the metallic substance is reduced in the center, and that such fuses do not infringe the patent in suit. Samples produced by the defendant as exhibits in the case sustain his claim to the effect that they do not contain a "thin, fine ribbon of extended area," which extended area is brought in contact with the filling of nonconducting material. The defendant further says that, soon after obtaining the patent in suit, it was discovered that fuses of the patent lacked mechanical stability and ease of manufacture, and that the advantages secured by it were not sufficiently superior to fuses made under the old means of manufacture to warrant the increased cost which was entailed, and therefore the complainant never adopted it in practical use, and that it never marked its fuses as having been manufactured under this patent.

There is a serious question in my mind as to whether the patent in suit covers the make-up of the fuses that the defendants have been manufacturing and selling. It is a well-settled rule of the law that where grave doubt arises as to what the final decree upon the merits must be, either as to fact or law, the summary power of the court to grant injunctions pendente lite should not be exercised, unless it may be to preserve the status quo of the parties under circumstances that will not work serious hardship to the party enjoined. It is also a settled rule of law that in acting upon applications of this sort the court "should regard the comparative injury which would be sustained by the defendant if the injunction were granted and by the complainant if it were refused." Besides, the granting and withholding of an injunction pendente lite rests in the sound and judicial discretion of the court.

Applying these principles of the law to the circumstances of this case, we find:

First. Upon examination of the facts developed by the affidavits, that there is a serious question as to infringement. The evidence raises a doubt as to either the complainant or defendants having been or being now in the manufacture or sale of fuses covered by this patent. The complainant shows by affidavits that the fuses manufactured by it were covered by the patent, and that the fuses manufactured by the defendant are also covered by the patent. This is squarely denied by the defendants' affidavits; hence a question of fact is raised which can only be settled upon the hearing on the merits.

Second. The evidence discloses the further fact that fuses which the complainant asks the defendant to be enjoined from making and selling are quite generally manufactured by other parties, are in the open market for sale, and thus the complainant will not suffer irreparable damages should the parties remain in status quo until the case can be disposed of on its merits.

Third. It appears from the affidavits of defendant, and not disputed, that, if this temporary injunction is granted, the defendants will suffer great injury and loss.

Wherefore the application for temporary injunction is denied.