JOHNS-PRATT CO. v. SACHS CO. et al.

(Circuit Court, D. Connecticut. March 12, 1909.)

No. 1,241.

PATENTS (§ 328*)—INFRINGEMENT—SAFETY FUSE.

 The Sachs patent No. 660,341, for an electrical safety fuse, construed, and *held* not infringed.

 [Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity. On final hearing.
See, also, 155 Fed. 129.

Wetmore & Jenner, for complainant.
Bartlett, Brownell & Mitchell, for defendants.

PLATT, District Judge. This is the usual patent suit, based on letters patent to Joseph Sachs, No. 660,341, for an improvement in safety fuses. The defense is noninfringement. All the claims are involved, but it is enough to quote the first one:

 "(1) A safety fuse comprising a case and a filling of nonconducting material, and a fuse strip therein of thin flat metal of extended area, substantially as and for the purposes set forth."

We must at the beginning settle the principle upon which we shall examine the patent, because of the story surrounding it.

Mr. Sachs, the patentee, was employed by the complainant when he applied for and obtained this and other patents at its expense. The contract under which he worked persuades one that he is a man of capacity and genius. He sold the patent in suit, with others, to the complainant for value. Thereafter he was discharged from the service of complainant, and organized the defendant corporation. The complainant alleges that safety fuses made and sold by said defendant corporation come within the monopoly transferred to it by the sale of said patent.

The statutes permit the person who has invented a new and useful thing to obtain a monopoly thereof for a specified length of time, after making such a clear exposure of his invention as to enable those skilled in the art to use it. If he sells to another for value his evidence of title in that monopoly, and then invades it, he cannot be heard to say that he did not invent a new and useful thing. Others may do so, but he may not. On the other hand, when charged with such invasion, it is of the first importance to find out what the invention was that he disclosed and meant to claim, and what the government intended him to monopolize.

So understanding the law, it strikes me as proper to examine the proceedings about the patent from the time of the application therefor until the grant, and to study the prior art, if it be necessary, in so far as it may be of service in learning what the new thing was that the patentee invented. Taking up, then, the file wrapper and contents, we find that the patentee in his disclosures has given us a pret-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ty extensive résumé of the prior art relating to safety fuses, but he particularly calls attention to wires which had been inclosed in a tubular case and surrounded with a filling material, and is quite reticent about flat strips which had been similarly treated. Flat strips, however, had been so treated, and the patentee knew it, because he had used them himself. (See claim 1, patent 522,232.) The flat strips formerly used, however, had been heavy, and it was necessary to cut them nearly in two at one point in order to insure a quick break when the fuse was overloaded with electric current. Now, what the patentee was after was to avoid "hanging," which means that, when the metal of the fuse is melted by excess heat due to an overload of electric current, the melted particles must be at once dissipated and diffused to such an extent as that the current cannot avail itself of the disorganized mass and thereby leap over beyond the break. Pretty much every possible expedient to eliminate this deadly hanging quality had been tried in the art, and when strips had been used they had been made thick and heavy, but attenuated at the crucial point, as before suggested. The patentee's idea was to put in a very thin strip with a reasonable width, so that, when the excess current furnished heat enough to melt it, the whole strip would be melted and the particles instantly dispersed into the surrounding filling, thereby leaving no disorganized coagulated mass for the electrical current to utilize. The words used in his disclosures and all the arguments addressed to the examiners emphasize the idea of thinness and appreciable area. That is where the novelty lies, beyond peradventure.

Thus it appears that the novelty of the thing resided in the use of a thin flat strip of appreciable area, which by reason of such construction would be endowed with the nonhanging function. That such a novel strip is patentable has been decided in the Incandescent Lamp Case, 52 Fed. 309, 3 C. C. A. 83. There a rod was reduced to a filament, and it was held that such a change in dimension produced a new result, and was therefore a difference in kind rather than degree.

Having found the invention, it is obvious that the claims must be construed in accordance therewith. When we examine the defendant's device in the light of the knowledge we now have, it is manifest that although it may be read upon the language of the claim, unexplained by the matters referred to and others, it in no sense responds to the actual invention which the claim covers. It contains, in a combination of which all the other elements are old, nothing more or less than the attenuated thick flat strip of the prior art.

During my illness two years ago a preliminary injunction was denied in this suit. Johns-Pratt Co. v. Sachs Co. (C. C.) 155 Fed. 129. Since then many experiments and tests have been indulged in by both parties, but I cannot see that they throw very much light upon the central thought which struck Judge Martin at the threshold, as it strikes me now at the end. At the hearing on preliminary injunction the complainant seems to have taken the same position which it takes now. Judge Martin, quoting evidently from complainant's brief, says:

"Complainant asserts that * * * the novelty consists in uniting a wide thin strip with the filling so it will completely envelop the fuse, and thus best

utilize the properties of the ready fusibility and the quick dispersion of the heat of the strip when melted."

The trouble with complainant, then and now, is that it has overlooked the Mordey patent No. 622,511, which was cited against Sachs in the Patent Office. That patent shows all the elements of the patent in suit, combined in the same way and for the same purpose, except that the Mordey strip is not the "thin strip of extended area" of the patent in suit. Nobody had discovered such a strip as Sachs disclosed. He satisfied the Patent Office that the finding of that kind of a strip containing the qualities and uses which it contained was an inventive act. It was not an easy matter to satisfy the office in that respect. He argued it out to one obstinate examiner, and then lost him. He was forced to convince a new doubter. Much of his argument is left to our imagination, but enough remains to demonstrate its cogency. The writer is assured that he knows what the patent means, and, reading the claims as they must be read, the defendant does not infringe.

While the application for the patent in suit was pending, the complainant, under the management of Mr. Sachs, was marketing safety fuses, which had as one of the elements of their combination a flat strip of some thickness, but attenuated at the crucial point so as to expedite quick breaking under extra electrical load and prevent hanging. Nothing in the disclosures, either verbal or pictorial, of the patent hints at such a construction. Such omission is strongly suggestive of the working of the patentee's mind at the time. The very thing made then by complainant is still made by it, and by many others as well as by defendant, and is the identical construction which is said to infringe.

Let the bill be dismissed.