JOHNS–PRATT CO. v. SNOW.

(District Court, W. D. New York. November 5, 1913.)

1. PATENTS (§ 328*)—VALIDITY—INFRINGEMENT—SAFETY-FUSE.

Sachs' patent, No. 660,341, for an electric safety-fuse, consisting of a combination of elements the most important of which is a thin flat strip of metal disposed through an appreciable area and held between terminals within a tubular casing or cartridge containing a nonconducting substance in a powdered or granular form, claims 1, 2, 3, 5, and 6, *held* to involve a patentable invention, not anticipated, and infringed.

2. PATENTS (§ 64*)—ANTICIPATION.

In order that a prior patent may anticipate a later one, it must do so without assistance from the patent alleged to be anticipated.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 79; Dec. Dig. § 64.*]

3. PATENTS (§ 328*)—VALIDITY—DESCRIPTION.

Sachs' patent, No. 660,341, for a combination in a safety-fuse with a tubular case and a nonconducting filling material, of end terminals within the case of relatively ample conductivity, and a fuse-strip of thin flat metal of extended area connected to and between the terminals, was not void for concealment and indefiniteness, in that it did not describe or specify the particular nonconducting filling material; the invention not involving a new filling material, and the character of such material not being an essential element of the patent.

In Equity: Suit by the Johns-Pratt Company against Ernest W. Snow, doing business as E. W. Snow & Co. Decree for complainant.

Edmund Wetmore and Oscar W. Jeffery, both of New York City, for complainant.

Church & Rich, of Rochester, N. Y. (Frederick F. Church, of Rochester, N. Y., of counsel), for defendant.

HAZEL, District Judge. This action was brought by the Johns-Pratt Company, to enjoin the defendant, E. W. Snow & Co., from the infringement of letters patent No. 660,341, for an electric safety-fuse, issued October 23, 1900, to Joseph Sachs, who subsequently assigned the patent to complainant. The defenses are want of invention, and invalidity for failure to clearly disclose "what is absolutely necessary to accomplish the desired result." Claims 1 to 6, excluding the fourth, are involved; but it will suffice merely to reproduce the second claim, which reads as follows:

"2. The combination in a safety-fuse with a tubular case and a nonconducting filling material, of end terminals within the case of relatively ample conductivity, and a fuse-strip of thin flat metal of extended area connected to and between the said terminals, substantially as and for the purposes set forth."

The Sachs patent in controversy has been considered by the Circuit Court and by the Circuit Court of Appeals for the Second and Third Circuits; the first time being in the case of Johns-Pratt Co. v. Sachs Co. (C. C.) 168 Fed. 311, wherein it was held that the patentable novelty of the device resided in the use "of a thin, flat strip of ap-

preciable area," but the bill was dismissed because the device of the defendant was not an infringement of complainant's; and, afterwards, the Circuit Court of Appeals, 175 Fed. 70, 99 C. C. A. 92, reversed this decision, holding that the fuse-strip used by the defendant in that case was described in complainant's patent, and that the doctrine of estoppel applied, as the patent had been assigned by the patentee Sachs to the complainant, making inquiry into the prior state of the art to prove invention unnecessary.

The said patent was next litigated in the District Court of New Jersey, Johns-Pratt Co. v. E. H. Freeman Elec. Co., 201 Fed. 356, affirmed (C. C. A.) 204 Fed. 288, and the late Judge Cross found a decree of infringement in complainant's favor, deciding in a clear and comprehensive opinion that the various elements of the combination in suit, though separately old, had never been combined to coact, and that by such combination a new and useful result was produced.

It is practically admitted by the defendant that the defenses in the Freeman Case were similar to those in the case at bar, but criticism is made as to the manner in which that case was presented, the contention being that important features relating to the defenses were overlooked or ignored. It goes without saying that the decision in the Freeman Case is entitled to the utmost respect, and, though not conclusively bound thereby, it is nevertheless the duty of this court to follow it unless persuaded by the present record that such decision was wrong, and, even though the questions presented were not entirely free from doubt, it would still be incumbent upon this court, in order to secure uniformity of decisions in the various circuits in patent causes, to agree with such decision as to matters therein decided unless clearly satisfied that it was erroneous. Calculagraph Co. v. Automatic Time Stamp Co., 187 Fed. 276, 109 C. C. A. 618; Gormley & Jeffery Tire Co. v. United States Agency, 177 Fed. 691, 101 C. C. A. 479. From my examination of the record I regard the Freeman Case as having been properly decided.

[1] The invention in question relates to an inclosed electric fuse which has a thin, flat strip of metal disposed through an appreciable area and held between terminals within a tubular casing or cartridge containing a nonconducting substance in a powdered or granular form. When the device is in operation—that is, when electric currents of excessive intensity pass through it—such often being the case, the strip, which is the fusing element, melts the fuse because of the heat engendered by the resistance of the current in its path, and the molten portions are divided into minute particles which commingle with the filling material in the tube. The evidence shows that where safety devices were not used there were injurious consequnces from the use of electric currents generated from a dynamo because of the frequent overloading and short circuiting, and that to eliminate such injurious effects the safety-fuse came into existence. It was designed to concentrate the high resistance supplied by the excess current in a tubular casing so that the consequent heating or arcing of the wire or fuse should occur within the casing, wherein was contained a fusible section of higher resistance than the conductor, causing the molten

material to disperse in a suitable filling so as to break the circuit. The specification of the patent in suit, after stating that the prior art disclosed a safety-fuse consisting of wire, or lead, or lead-tin alloy, says:

"I have discovered that the nonarcing qualities or action of a fuse depends upon the disposition, character, and amount of the metal, and that for this purpose a fuse-strip having a relatively small quantity of metal will give the best results. I have also discovered that the best results are obtained from the use of a metal which when melted or fused rapidly oxidizes even if the melting point of the metal is not comparatively low."

It was therefore not new at the date of the invention in suit to inclose a safety-fuse in a round casing, and it was not an uncommon expedient to use a filling of a nonconducting material, preferably a powdered or granular substance; indeed, without such nonconducting filling material for dispersing the melted wire, the fuse would have proven inoperative. The lead or tin alloy wires consisted of comparatively large sections of metal, and on account thereof, according to the evidence, were objectionable, owing to the difficulty in dispersing the fused parts in the filling which manifestly hindered the flow of the current. The patentee overcame this difficulty by substituting a thin, flat piece of metal of rapidly oxidizing qualities in place of the large sections of wire mentioned, disposing the same through a considerable area of the casing to impart to it an enlarged superficial contact with the filling material. He arranged the flat strip in the casing so as to cover the same with the filling material without exposing it to air spaces—an important modification of the prior state of the art to which much of the success of the achievement is due.

The fact that the skilled in the art were aware of the inadequacy and ineffectiveness of prior safety devices because of their tendency to arc or hang, and the further fact that prior inventors who endeavored to eliminate the objections and make more efficient fuses failed to achieve success, are cogent proof that the patentee, after many trials and failures, made by his invention a meritorious advance in the art. The commercial success which his improvement at once attained, as shown by the large number of sales, is strong proof of the assertion that by the introduction of the flat, metal strip in the inclosed fuses, and by his arrangement of it in the casing, the patentee overcame the objections to which the prior devices were subject, producing a safety fuse of greater efficiency in the protection of property. From such an inventor, even though not a pioneer but merely one improving a known art, due praise should not be withheld by the courts in an action brought for the protection of his patented improvement.

As to anticipation by prior patents: The court has reached the conclusion that the feature of the thin, flat metal fuse-strip of extended area in contact with nonconducting filling material is patentably novel. It will be necessary to follow the argument of counsel for defendant in a few only of the prior patents to which he attaches importance.

The Hadaway patent describes a fuse wire strip of magnesium. The specification says that by oxidizing the wire strip below the point

of fusion it becomes a nonconductor, and thereupon the flow of the electricity is interrupted and broken off. There is no fusing of the metal strip as in complainant's patent, but rather a prevention thereof, and, though defendant contends that this difference from complainant's patent is inconsequential, I am nevertheless of the opinion that the operation of the Hadaway device is on an entirely different principle. The experimental tests to dissipate the filling as made by the witness Shearer have not been overlooked, but I am not satisfied from the evidence that the said tests were operated in the precise manner specified in the Hadaway patent, which, by the way, was fully discussed by Judge Cross, who thought the fuse similar to one disclosed in an earlier patent to the present patentee.

[2] The Mordey patents, the one British and the other United States, the former dated 1890 and the latter 1899, which are concededly defendant's best references, were thoroughly gone into in the Freeman Case. In the British patent is mentioned the dispersing action of the molten metal as well as its contact with the filling. The strip consists of one or more wires, or a thin foil, or sheet metal. In the Mordey United States patent is included the feature of an air space in the middle of the fuse for the purpose of centering therein, as the patentee says, the rupturing point of the fuse; but, though such patents are suggestive of some of the elements of the patent in suit, yet there are important omissions. They do not indicate a fuse strip of the character described in complainant's patent—one having an appreciable area within a tubular casing and surrounded by a nonconducting filling. These were features which were considered by the patentee in suit as essential and necessary to achieve the desired result. Mordey's metal strip or wire was of copper, which oxidizes slowly, while complainant's metal strip oxidizes rapidly. Moreover, there are in his structures no terminals within the tube possessing greater conductivity than the metal strip. As heretofore intimated, there are similar features in the Mordey and complainant's patents, but unfortunately the former were unable to successfully overcome the objections to which reference has herein been made. The rule is well established that a prior patent to anticipate one of later date must do so "without assistance from the patent" alleged to be anticipated. Cohn v. United States Corset Co., 93 U. S. 366, 23 L. Ed. 907. None of the prior patents come within this rule. The experiments of the witness Shearer relating to the Mordey patents are not of such a thorough character as to persuade me to disregard their inability to achieve the desired result.

The McColloch patent, in relation to which no expert testimony was tendered, describes a fuse-strip or ribbon which is reinforced by an enlargement at each end imparting an increased capacity for carrying the current at these points. The patent, however, lacks the essential thing to which complainant's patent is indebted for its success, i. e., the thin, flat strip of extended area connected to and between terminals. In the McColloch structure a calibrated wire with ends turned back is wound around or twisted so as to leave a part of the single wire "or other conductor in the center." The terminals are

not extended into a tubular casing "of relatively large area and ample conductivity" as in complainant's, and, besides, the filling material has wholly different characteristics, for it consists of asbestos which covers the wire or ribbon inclosed in a box and not in a tubular casing. The McColloch patent is not anticipatory of complainant's patent.

The Downes patent, No. 640,371, and invention are next claimed to be a complete anticipation, and importance is attached to patentee's concession in the Patent Office regarding the prior state of the art. It is shown that originally claims 1 and 2 of the patent in suit referred to a series of thin strips, and other claims to a thin, flat strip, each of which was designed to functionally operate in such a way as to reduce the strips to a molten state from excess current and to then dissipate the same in the filling material. Claims 1 and 2 of the original application were rejected upon the Mordey and Hadaway patents, and were then amended, but without limitation as to a strip of thin, flat metal of extended area, etc.; but there was yet another rejection, the examiner citing the Downes patent, and then the patentee eliminated the feature relating to a series of strips and substituted the claims under consideration. Defendant now contends that, as applied to electrical and mechanical action, there is no essential difference between the series of wires connecting the terminals, and the thin, flat strip; but it strikes me that it was not a mere substitution of a thin, flat strip for a series of wire conductors with similar functions, and, furthermore, the Downes reference discloses that the fuse links therein described are preferably of lead or lead alloy passed through the ends of a drum and "penetrating into air spaces C." Such method of construction is thought materially and functionally different from complainant's, which, as already stated, emphasizes the feature of a flat strip of appreciable area in a tubular section in combination with the material by which it was covered. This determination makes it unnecessary to pass upon the disputed point of priority to decide whether or not Downes was the original inventor. Defendant's counsel at the argument stated that the patentee (Sachs) in an address before the American Institute of Electrical Engineers frequently admitted the equivalency of a series of wires to a thin, flat strip, but upon reading the same I am unable to draw that inference.

Defendant has introduced in evidence link fuses of aluminum and zinc which were in use anterior to the patent in suit; but, as such fuses can only be used in the open air, they are thought to belong to a different class and to be without material relevancy to the safety fuses in question.

[3] In reference to the claim of concealment and indefiniteness, it was principally contended that the patent in controversy was fatally defective for its omission to describe or specify the particular nonconducting filling material; but I do not agree with this contention. The patentee does not claim to have invented a new filling material, nor is this feature an essential element of his patent. He designed to improve the prior art, and in his specification admitted that safety devices of the type described in the specification were ordinarily 'inclosed

212 F.—12

in a tubular case and surrounded with a filling of nonconducting material." He refers to a filling material of nonconducting characteristics such as will "more readily disperse through the interstices of the filling than if the strip were of compact sectional area," and with such filling materials the art was familiar. For these reasons the defense of invalidity on the ground of concealment and insufficiency of description is not sustained.

The exhibit in evidence marked, "Complainant's Exhibit No. 4. Defendants Infringing Fuses and Parts," contains in combination all the elements of the claims of the patent in suit, and, as they operate in precisely the same way and achieve the same result, the complainant is entitled to a decree determining that the claims in controversy, namely, claims 1, 2, 3, 5, and 6, are valid and infringed. So ordered.